## No. 13,484.

## ALBERT DELISLE vs. WIDOW HENRY P. BOURRIAGUE.

### SYLLABUS.

1. An amendment of pleadings is more readily allowed than refused. There is no substitution of a new plaintiff when the original plaintiff amends his petition in order to make it clearly appear that his children, in whose name he sued, were the parties actually in interest. The supplement and amendment were duly served.
2. Minors have a cause of action for the personal injury which resulted in the death of their mother. The right of action of the mother is made to survive in the name of her children.
3. Weight is given to the findings of facts by the district judge, affirmed by the Court of Appeal. Except in case of manifest error, they will be treated and considered as true.
4. Defendant's dogs were large and had the appearance of being vicious, and it

is inferred that defendant was placed on her guard as to their propensity to do harm.

5. Although an owner is not responsible when the damage is caused by an unforeseen accident or an accident he could not guard against, as when it arises from a *vis major*, he is responsible when he is chargeable with the least fault.

6. The defendant requested the deceased to come into her yard, and, after she (deceased) had complied with the request, defendant did not protect her from the attack of her savage dogs; she is, therefore, responsible for the injury which the dogs inflicted.

IN RE Widow Henry P. Bourriague, applying for *Certiorari*, or Writ of Review, to the Court of Appeal, Parish of Orleans, State of Louisiana.

*Sambola & Ducros, Albert Voorhies* and *Joseph B. Derbes* for Applicant.

*Dinkelspiel & Hart, Percy S. Benedict* and *E. A. O'Sullivan* for Plaintiff, Respondent.

The opinion of the court was delivered by

BREAUX, J.　Defendant asks for a review of the judgment and for its reversal.

The suit was brought by the plaintiff in the district court in his own name and on behalf of his minor children for damages arising from the death of his wife and the mother of his children, who died from the effects of injury inflicted by defendant's dogs. Plaintiff averred in his petition in the district court that his wife was requested by the defendant, who was their next-door neighbor, to come into her back yard and cut some wood; that the petitioner's wife being indebted to defendant and wishing to be obliging, after receiving defendant's assurance that she would be protected against the dogs, entered the yard and while chopping defendant's wood in the presence of defendant she was attacked by her dogs, was maimed and torn almost to pieces, causing wounds of which she died a short time after the attack.

Defendant filed an exception setting forth that plaintiff's petition disclosed no right or cause of action; that the children of plaintiff are not named therein; and that it contains no prayer for relief in so far as the minors are concerned.

This exception was heard in the district court and maintained, but

the court reserved to plaintiff the right to amend his petition. Some time afterward, plaintiff filed a supplement and amendment in the district court, in accordance with the right reserved to him when defendant's exception was sustained. To the supplement and amendment plaintiff filed another exception reiterating that plaintiff had no right or cause of action and that thereby plaintiff was substituting another plaintiff entirely, and raising issues not raised in the original petition and which were not consistent with the first demand. This exception was referred to the merits and just prior to deciding on the merits it was overruled. The defendant filed the plea of general denial in answer to plaintiff's demand.

The judge of the district court pronounced judgment for plaintiff in the sum of two thousand dollars. On appeal before the Court of Appeal, the judgment of the district court was affirmed. Here the defendant reiterates that the plaintiff has no right or cause of action and sets up that the original petition filed was the individual petition of Albert Delisle, stating that the death of his wife, the result of the bite of dogs, was caused by the defendant's fault; that he lost the companionship and assistance of his wife; that he has to pay large medical bills and funeral expenses, and that he has lost considerable time in attending to his injured wife's wounds prior to her death. In our view, plaintiff did not, by the amendment, substitute another plaintiff. His children were originally parties to the suit, as their father alleged that it was brought in behalf of his minor children. He was not their tutor at the time, none the less he sought to make them parties by alleging as before stated. After he had qualified as tutor he not improperly was permitted to avail himself of the right which had been reserved to him as tutor to become the party plaintiff. Whatever right these minors had, they were entitled to them at the time suit was brought. As they were not properly before the court, allegations setting forth their claim were admissible by way of amendment and supplement. They were not parties strangers to the suit, but parties in whose behalf plaintiff had sought to set up a claim and failed to some extent because of his omission to set forth the names of these minors. He was also permitted by way of amendment to aver more fully his cause of action whether individually or for his minor children, and more specifically the items of damages sustained, and in the case of his failure thus to allege, his suit was ordered to be dismissed.

These exceptions did not tend to defeat the action. They only re-

tarded its progress. In cases on appeal, this court will consider that
granting permission to amend is less likely to do an injustice than
its refusal. This court has also held that amendment should be allowed
when it prevents a multiplicity of suits.

The amendment was granted contradictorily with the defendant. The
court ordered the defendant to be cited, and we judge that the suit
was placed at issue after legal service had been made. The deficiency
in the allegations of the cause of action not sufficiently set forth may
be supplied when the amendment and supplement is permitted contra-
dictorily with all parties concerned.

As relates to the two: an absolute dismissal or permitting one to
amend contradictorily with those he sues, the difference is inconsider-
able and can well be considered on an application to review proceed-
ings as coming within the rule *de minimis non curat lex.*

This brings us to defendant's ground of defense, that the minors have
no cause of action. Originally the article of the Civil Code relating
to damages growing out of offences or *quasi*-offences was quite re-
stricted in its scope in so far as related to the heirs of the one injured.
Interpreting this article (2313 as originally written) the court held
that the right of action was not heritable. In course of time, this
article was amended in order to prevent the right from perishing in
case of the death of the one originally injured. By the first amend-
ment, the right was inherited, in case of death, by the minor children
and widow of the deceased, and if there were no minor children or
widow, then by the surviving mother and father. This amendment was
interpreted by a decision of this court as not embracing within its
terms the husband, but instead the father and mother. Walton vs.
Booth, 34 Ann. 914. This decision had been handed down a compar-
atively short time when Statute 71 of 1884 was enacted, by which the
right was made to survive by the use of the following language. The
survivors above mentioned may also recover the damages "sustained
by them by the death of the parent or child or husband or wife as the
case may be."

In Chivers vs. Rogers, 50 Ann. 57, this court decided that the right
of action for the recovery of damages to an injured person who dies
subsequent to receiving the injuries survives only in favor of the ben-
eficiaries designated in the statute of 1884. Here, the minors who sue
are expressly designated (they are the children of a mother deceased
who suffered personal injuries), and it is not for us to determine that

they shall not recover in the face of the plain provision of the statute designating them.

Defendant's insistence is that where the injuries are suffered by a married woman, inasmuch as the right of action in her lifetime is the asset of the community, not the personal property of the injured spouse, this community right of action is extinguished by the death of the injured wife. We do not take it that this is the inference to be drawn from the language of the statute, which expressly provides that this right *shall pass to the heirs*. The language of the statute is imperative; the damage, in case of the death of the parent injured, shall pass to her minor children, and if she left no minor children, then in favor of her surviving father and mother.

We understand that, in order to avoid the extinguishment of the right, a right of action is given to the heir as just stated. Although without legislation, the wife has no personal claim, separate from the community, by legislation the right of action for her personal injury may be made to survive in the name of the forced heirs. But defendant further urges that the personal right of action of the children under the second clause of the law of 1884 exists only in case they are entitled to the inheritable right of action provided for by the first clause of the law, that a oneness or solidarity exists between the two rights of action granted by the statute by reason that under the second clause, the survivors named in the first clause may also recover damages sustained by them by the death of the parent; that the copulative conjunction "also" manifestly shows this solidarity, that is, unless a minor child has a right of action under the first clause he can have none under the second clause and *vice versa*. The word "also" connecting the first with the second clause, in our view, does not have the restrictive effect for which defendant contends. On the contrary, it has the effect of extending or broadening the rights so as by implication, at least, to include the parent, whether it be father or mother.

We pass to a consideration of the defendant's responsibility for the injury inflicted by her dogs. The district judge, in a carefully prepared opinion, describes these hounds as being large with long bodies and flapping ears, long tails and of a brownish or reddish tan color. He concluded, from their description, that they were English bloodhounds. in all probability crossed with stag hounds, corresponding in description with the hounds kept in the prisons of this and other States and trained for the pursuit of escaped convicts. He states further, that

the dogs were vicious may be inferred by their size, breed, and actual conduct. These are the views of the judge upon whom, in the first instance, devolves the task of sifting and weighing conflicting testimony. This opinion does not come up before us directly for review. Another constitutional authority is entrusted with the duty of giving it consideration and of appreciating the facts as set forth by the witnesses and of passing upon the first judgment based upon these facts. The Court of Appeal, in deciding the case, found that "there is conflict of evidence as to the character of the dog's and defendant's knowledge thereof. but we should accept the conclusion of fact of the judge who heard and saw the witnesses, but were this otherwise, we do not think that the doctrine of *scienter* as a prerequisite to the liability of the owner finds lodgment in our law and jurisprudence. Not only does any act whatever of man that causes damages to another oblige him by whose fault it happened to repair it, but he is responsible for damages resulting from his negligence or imprudence caused by the act of the thing which he has in his custody. R. C. C. 2315, 2316, 2318 are positive and unequivocal. "The owner of the animal is answerable for the damage he has caused." There is no qualification, no restriction, no condition affixed to the legal responsibility, citing Marcade and Demolombe in support of the views before expressed.

· The Court of Appeal, in its opinion, also says: "In a case in which a father was sued for damages caused by his minor child, it was said 'the law itself imputes the fault to the father.' It presumes that it resulted from lack of sufficient care, watchfulness, and discipline on his part in the exercise of the parental authority. This is the very reason and foundation of the rule. For like reasons, the law imposes responsibility upon the owner for damages occasioned by his animals, who have certainly no greater powers of discernment than the infant of tender years," citing 37 Ann. 92.

We are not inclined to question the correctness of the conclusion of facts at which the judge of the district court arrived, affirmed as they are by the Court of Appeal. Taking this conclusion of facts as found, for a basis, it irresistibly follows that the defendant was at fault; that these dogs were not the mild and amiable creatures she says they were. But the defendant in meeting plaintiff's charges that these dogs were, to their knowledge, savage and fierce, insists that it was then imprudent on the part of the mother to venture to go in defendant's yard to cut wood for her. This insistence presents mat-

ter for consideration in fixing the amount of the damages to which we will return in a moment.

This brings us to a consideration of the doctrine of *scienter* as an element in fixing the owner's liability. We are not inclined to go to the extent that it is of no consequence in determining the liability of the owner whether or not he had knowledge of the vicious propensities of his animals. True, the owner of the animal is responsible for the damage it has caused. We do not think, however, that there is no limitation to his liability and that in all cases of bad conduct of the animal causing the injury, he is to be held in damages. The article itself relating to the owner's responsibility contains restrictions and qualifications. The owner is not responsible if the animal had been lost, or had strayed more than a day, and he may discharge himself from responsibility by abandoning it, save where the master has turned loose a dangerous animal, for then he must pay for all the harm done. There is no question before us of abandonment. We quote above from the article relating to injury caused by animals to sustain the proposition that there are limitations to the responsibility, besides that the damages caused by animals are not viewed, as relates to liability, as being similar to the damages caused by a minor for which a tutor is responsible, or the damage for which employers are responsible growing out of the acts of their employes, teachers for their scholars, and artisans for their apprentices. The control and relation between one another are not the same. The sentiments of consideration and respect and control between man and animals is not the same as that which exists between man and man, and, in consequence, the liability for damages is fixed by different rules. As to the animal, as it is in some cases with a mere thing, it may be abandoned in case it has caused damage.

In our view of the authorities upon the subject, we have not found that under the civil law, from which the articles of our Civil Code are derived, it is always held that the character of the animal and knowledge of its propensities to do harm is of no consequence in passing upon the responsibility of the owner. We take it that the rule is the other way in so far as the damage is caused by an accident not to be foreseen or guarded against, as when it arises from a *vis major*. Article 2321 of the Civil Code (Article 1385 C. N.) is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident, and that presumption can be made to give way only

in the presence of proof either of an unforeseen event, or by the imprudence of the one injured. Fuzier-Herman, Vol. 3, p. 905, No. 37.

The French commentators have approvingly referred to this view. From Laurent, Vol. 20, p. 675, we quote: That is to say there is no responsibility when there is no fault, the one to whom the damage is imputable should be permitted to prove that he was not at all at fault. But it is only needful to prove the lightest fault (*culpa levis*) to hold the owner responsible.

In all the cases in our jurisprudence to which we have been referred, there was some fault for which the owner was responsible, notably the case of Montgomery vs. Koester, 35 Ann. 1094, and McGuire vs. Ringrose, 41 Ann. 1029.

The amount of the damages is the only question remaining for our determination.

A moment ago we referred to the fact that the children of the deceased testified that the dogs in question acted with some degree of fierceness and sought to annoy them from the neighboring yard. It none the less remains that defendant requested the mother (the deceased) to come into her yard to cut wood for her and that after she had complied with the request, the defendant, Mrs. Bourriague, could not (did not even attempt) to protect her from their attack.

For reasons assigned, the order *nisi* is recalled and set aside and defendant's application is rejected.

Rehearing refused.