FRUGÉ, Judge.
This is a tort action seeking damages for personal injuries and property damage resulting from a collision between plaintiff’s motorcycle and a calf. The accident occurred about 5 :00 p. m., on August 5, 1967, on Highway 8 of Rapides Parish, Louisiana. Highway 8 is not a “stock law”[1] highway, and thus cattle are legally free to roam on and about the public highway.
At the time of the accident, the light was good, conditions were dry, and the visibility was excellent. Plaintiff, Olen T. Jow-ers, was driving a 1958 Allstate 150 cc motorcycle in a general westerly direction, on this east-west highway, when his motorcycle was suddenly struck from the left side by a two-hundred and fifty pound calf. The calf belonged to defendant, John L. Pleasant, Sr., who was in the process of attempting to move his cattle from one side of the road to the other. Defendant was on horseback on the south side of the highway. Some of his cattle were on the north side, some crossing the highway and some in the woods and brush between him and the highway. He planned to traverse the highway, drive the cattle back to the south side, and bring them home.
At the place of the accident, the highway is straight and level. On the north side of the highway, there was an open ball park, but on the south side only eleven feet of open area separated the roadway from the dense brush and trees of the woods. It is from this left or south side of the highway that the calf appeared.
The testimony of the plaintiff and the defendant, the only two persons near the scene of the accident, does not differ substantially as to essential points. According to the testimony of the defendant, who was not an eye witness to the accident, he was on horseback some fifty yards off the highway on the south side, headed for the ball park on the opposite side of the highway, when he heard the motorcycle approaching. As he was in dense brush, he could not see the highway, but had observed that two of his cattle were headed in a direction over the road from the woods to the ball park. He testified that he knew there were several cattle in the woods and the undergrowth, located between himself *213 and the highway, but that he was not certain of where they were. He heard the motorcycle when it was about a half-mile away, and at that time, stopped his horse for the .express purpose of not exciting the cattle to run onto the highway. He remained in that position for several minutes while the motorcycle approached, and after hearing the noise of its involvement with one of his cattle, not the two he had seen crossing, he rode up to the highway.
When plaintiff approached a point approximately one-eighth of a mile from the scene of the accident, he observed two cows enter the road from the woods on his left, or the south side of the highway. At that time he was driving the motorcycle at a speed of forty miles per hour but reduced his speed to twenty or twenty-five miles per hour. The cattle continued across the highway to the open area of the ball park. Continuing forward at this reduced speed, plaintiff had passed the point where the cattle crossed the highway when suddenly, without warning, a single cow ran onto the highway from the dense trees and undergrowth on the left or south side and struck the motorcycle on which Mr. Jowers was riding. The motorcycle was struck on the left side, knocking it off the highway on the right, where it came to rest.
Plaintiff sustained injuries and was treated by Dr. Bennett Sewell of Boise, Louisiana. His injuries amounted to minor bruises and abrasions, brush burns and a strain of the left shoulder. As a result of his injuries, Mr. Jowers missed a week of work. The motorcycle sustained damage as a result of the accident and was left in an inoperable condition.
After trial on the merits, the lower court awarded judgment in favor of plaintiff, from which judgment defendant has appealed.
Defendant alleges that there is no evidence upon which the trial court could have logically found negligence on his part, or in the alternative, that the trial court was manifestly erroneous in not finding that plaintiff was contributorily negligent.
The law governing the liability of owners of animals is found in Article 2321 of the Louisiana Civil Code (1870) which article reads in part as follows:
“The owner of an animal is answerable for the damage he has caused * *
By a reading of L.S.A.-C.C. Art. 2321, it would seem that strict liability would be imposed upon the owner of an animal that did damage. That article has been interpreted, however, as being subject to the “fault” requirements of L.S.A.-C.C. Arts. 2315 and 2316. See Tripani v. Meraux, 184 La. 66, 165 So. 453 (1936). As was well stated in the case of Kennedy v. Frierson, 142 So.2d 838 (La.App.2d Cir., 1962):
“ * * * [T]he owner of an animal is responsible for damage which it causes if there is any proof of negligence, however slight, on his part * * * (Citations omitted.)
“It is equally well established by the above cited cases, and others to the same effect, that where an animal has been the cause of damage, the burden rests upon the owner to exculpate himself of. even the slightest degree of negligence.
“It is scarcely necessary to observe that the burden placed upon the owner of an animal by these incontrovertibly established legal principles is not insubstantial but requires him to establish, by proof of facts in a given case, his complete freedom from any negligence of even the slightest degree to which might be attributed the action of the owned animal by which damage is caused- to another.”
Of significance here is the fact that the highway upon which the accident happened is not what is generally referred to as a “stock law highway”.[2] The cases involving accidents between motor vehicles and animals are generally dividable accord *214 ing to whether the accident happened on a stock law highway or a non-stock law highway. The predominance of cases dealing with the latter concern suits by animal owners against motorist, while the former concern suits by motorist against animal owners, and thus the emphasis on liability has been different in each of the two situations.
After some research, the court has found some cases which it believes consider facts similar to the one at hand. In all three of the following cases noted there was a question of personal injury arising from collision with an animal on a non-stock law highway.
In the case of Cusimano v. Giannobile, 15 So.2d 87 (La.App.1st Cir., 1943), plaintiff alleged that, while she was driving by the residence of defendant, a mule was suddenly driven out of the premises through a gate, allegedly held open by defendants, onto a highway, and so close to her automobile that she was unable, although driving at a safe and reasonable speed, to stop before colliding with the mule. Further, it was alleged that an employee of defendants had been chasing a mule from a back pasture to the front lot next to the highway, and that said chasing by the employee, and the opening of the gate by defendant, caused the mule to come out on the highway where it became an obstruction to plaintiff's free use of the highway. The trial court found that there was failure on the part of plaintiff to prove the allegations that there was an employee of defendant chasing the mule or that defendant’s negligence in any way was a cause of plaintiff’s injury.
In the case of Nicolle v. Gayden, 83 So.2d 680 (La.App.lst Cir., 1955) plaintiff sustained personal injuries when his automobile skidded and rolled over after he attempted to avoid striking defendant’s cattle, which were crossing or about to cross the highway. It seems that the plaintiff, as he was approaching the cattle crossing, had seen a horseman on his right, and had slackened his speed. Thinking that the road was then clear, he had again accelerated, but suddenly noticed three large, white cattle coming across the highway. Noting them to be moving at a fast walk, he jammed his brakes, the brakes locked, and his automobile skidded diagonally across the paved surface and then turned over several times. In finding the lack of negligence on the part of defendant, our brothers of the First Circuit stated:
“In the first place we are unable to hold that defendant was negligent in the manner of crossing his cattle, insofar as violating the standard of a reasonably prudent man. On the contrary, we are inclined to believe that a reasonably prudent motorist, observing at least 1000 feet away that there was activity in the cattle corral and knowing this was a cattle crossing, (as plaintiff admitted), should have approached the crossing with more care and his car under more control at a lesser speed. Further taking into consideration that if plaintiff’s car were approaching at the admitted speed of 55-60 m. p. h., it would be just in the curve one mile south of the crossing (or possibly out of sight behind the curve if going at the greater speed claimed by defendant) when defendant observed the roadway about one minute before the cattle came towards the edge of the road, we do not feel that necessarily it would be negligent of defendant to cross his cattle even if a car were within sight in the distance. A cattleman has a right to drive his cattle prudently across the road and to anticipate that motorists approaching from the distance would see what they should see and govern their actions accordingly; and is negligent only in circumstances of driving the cattle out on the road immediately in front of approaching motorists, or failing to keep the cattle from jumping out in front of an approaching motorist * * * [citations omitted] Otherwise, cattlemen might never be able to cross their cattle across the highway.” (Emphasis added.)
*215 In the instant case, defendant did not drive his cattle “immediately in front of approaching motorist.” Besides the fact that defendant was not actually in the process of driving the cattle as yet, he stopped his horse when he heard the approaching motorcycle for the specific reason of not exciting the cattle. As well, defendant did not fail to keep his cattle from jumping out in front of plaintiff, in that 1) there was no way for him to know or to prevent this one calf from acting the way it did, and 2) again, the defendant avoided any excitement of the animals by remaining quiet and still in the woods, away from the cattle crossing. As in the case just noted, defendant was not negligent.
In the case of Demarco v. Gober, 140 So. 64 (La.App.1st Cir., 1932) plaintiff, owner of a mule killed in a collision, sued the defendant for its value. The defendant, automobile driver having struck and killed the mule while driving on the highway, reconvened claiming damages for his automobile and for personal injuries. The defendant, along with others, had been in the process of moving this mule from a side lane to the highway or across the highway. The mule suddenly dashed from the lane into the highway, and noting defendant’s car, turned north running towards plaintiff, who was standing on the east side of the highway. Instinctively, plaintiff threw up his hands, and this scared the mule, again to the south, directly in the path of defendant’s automobile. Defendant alleged that it was the negligence of plaintiff in scaring the mule by waving his hand which caused said mule to run into the path of defendant’s car causing the accident and resulting damages.
Noting the absence of a “stock law ordinance”, which would have prevented the roaming at large on the highways of mules, horses and cattle, the court ruled that the plaintiff had certainly not had control of the mule at the time or permitted it to rush from the lane to the highway. The court said that when plaintiff saw the mule advancing on him at a rapid gait, he naturally without having time to think, threw up his hands. This was a natural, prompt, and unmeditated movement, which, it is certain, plaintiff could hardly have explained. Plaintiff, in thus acting, could not, be charged, in the slightest degree, with either fault or negligence. The court went on further to say, at page 66:
“ * * * It is this throwing up or waving of his hands which defendant contends caused the accident. In all probabilities that is what brought it about, because otherwise the mule would probably have continued northward or would perhaps have taken a westward course, thus avoiding the collision. That is all true, but in raising or waving his hands, which was the cause of the collision, plaintiff was not negligent in the slightest degree, and is not responsible in damages under the authorities above cited.”
Under the reasoning of the above case, we cannot find negligence in the present case. The court noted that it was the actions of plaintiff, the animal owner, that caused the accident. In our case, defendant was fifty yards away from the point of the accident, standing still, and blocked from a view of the accident by thick brush and woods. We cannot say that his action or inaction was negligence.
Plaintiff’s allegations of negligence on the part of Mr. Pleasant can be summed up in a paraphrase of the wording of his brief, wherein he submits that Mr. Pleasant was aware of the dangerous propensities of the area and the situation, but chose to let Mr. Jowers enter into this area of danger, that the defendant had created, without any warning of the hidden dangers on the south side of the highway. He alleged that Mr. Pleasant could have reached the highway before Mr. Jowers arrived at the point ■ of collision, since Mr. Pleasant got to the highway shortly after the motorcycle came to rest after the collision. Had Mr. Pleasant done so, he could have waved the motorcycle down or restricted any cattle attempting to enter the highway from the woods and undergrowth from the south *216 side. Mr. Pleasant not having done such, he was negligent.
After reviewing the last three cases, all of which concerned non-stock law highways and a suit for personal injuries resulting from a traffic accident with an animal under the alleged control of the defendant, we feel that there was established in trial absolutely no negligence on the part of Mr. Pleasant. Instead, we feel that Mr. Pleasant’s actions were those of a very prudent man. His first concern was for the safety of the motorcyclist, plaintiff, in that he remained fifty yards’ distance from the highway for the specific purpose of preventing any excitement or causing any cattle to drift upon the highway. The simple fact that two cows did drift upon the highway, and that another one darted out from the woods into plaintiff’s path, does not render defendant negligent. Had he attempted to stop the cattle, or rush out to warn plaintiff, he would surely have caused all of the cattle to scare upon the highway, probably causing a more severe accident than did occur.
The cattleman, Mr. Pleasant, had a right to have his cattle cross the highway. Simply because plaintiff did not heed the warning he received by the sight of the first two cows at a place he knew was frequented by such animals, we cannot say that defendant, situated fifty yards from the highway, was under a duty to ride over and give plaintiff additional warning. As was noted in one of the cases cited, defendant had a right to drive his cattle prudently across the road and to anticipate that plaintiff, approaching from the distance, would see .what he should see and govern his actions accordingly. The accident that occurred was simply not the fault of defendant. As was noted in the Demarco v. Gober case, supra, the accident was a result of a pure accident, without the fault of either plaintiff or defendant, in which plaintiff, particularly his motorcycle, happened to be the unfortunate victim.
For the foregoing reasons, it is the opinion of this court that the judgment of the trial court was manifestly erroneous and that said judgment in favor of plaintiff should be reversed in favor of defendant, and that plaintiff’s suit be dismissed with prejudice and at his cost. All costs to be paid by plaintiff-appellee.
Reversed.

. See L.S.A.-R.S. 3:2801 et seq.

. A highway wherein the free roaming of cattle upon the highway is prohibited.